**IN THE UNITED STATES COURT OF APPEALS**
   **FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 14, 2012

Lyle W. Cayce
Clerk

No. 11-20053

DEALER COMPUTER SERVICES, INC.,

Plaintiff-Appellant

v.

MICHAEL MOTOR COMPANY, INC.,

Defendant-Appellee

Appeals from the United States District Court
for the Southern District of Texas

Before STEWART, CLEMENT, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Dealer Computer Services ("DCS") and Michael Motor Company ("MMC") were in a binding contract which contained an arbitration clause. A contract dispute arose and MMC demanded arbitration. After proceedings, a unanimous arbitration panel rendered an arbitration award favorable to DCS. MMC moved the district court to vacate the award on grounds of evident partiality on the part of the DCS-appointed arbitrator. The court vacated the arbitration award, finding that there was a reasonable impression of bias. DCS later filed a Rule

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20053

60(b) motion to set aside judgment, which was denied by the court. For the following reasons, we VACATE the district court's orders and REMAND with instructions to CONFIRM the arbitration award.

## I. Facts and Procedural History

This case arises from the district court's order granting MMC's motion to vacate an unfavorable arbitration award.[1] DCS is a corporation that provides hardware maintenance, software support, and computer hardware to automobile dealers. MMC is an automobile dealership in West Virginia. DCS and MMC entered into a contract in 1995 where MMC purchased a 7000 MP computer system and DCS agreed to service it. MMC purchased the computer system under a "no-charge replacement" program pursuant to the contract. The contract contained an arbitration clause, requiring the parties to resolve disputes in accordance with the commercial rules of the American Arbitration Association ("AAA").

In 2006, a dispute arose when DCS informed its customers, including MMC, that a new software release would require dealerships using the 7000 MP system to upgrade to a new "X model server." MMC viewed this information as an indication that DCS intended to breach the contract and it refused to

---

[1] On June 13, 2010, DCS filed a motion to confirm the unanimous arbitration award. MMC filed a motion to vacate the award on July 28, 2010, along with an unsigned and non-notarized supporting affidavit. On August 18, 2010, DCS filed a response to MMC's motion to vacate and a motion to strike the affidavit of Mark Counts, attorney for MMC. On August 20, 2010, MMC filed its first amended motion to vacate along with an executed and notarized affidavit. MMC also filed a response to DCS's motion to strike the affidavit of Mr. Counts on the same day. The district court vacated the arbitration award on December 29, 2010 ("Dec. 2010 Order"). On January 10, 2011, DCS moved to alter or amend the Dec. 2010 Order. The district court reopened the case on January 11, 2011 and stayed final judgment. The court denied DCS's motion to alter or amend the Dec. 2010 Order on March 10, 2011. On March 11, 2010, DCS filed its notice of appeal from the court's order vacating the arbitration award and the court's order denying DCS's motion to alter or amend the Dec. 2010 Order. On June 3, 2011, DCS filed a motion to set aside the order and judgment which was denied on July 11, 2011 ("July 2011 Order"). DCS appealed this denial and the two appeals were consolidated on July 25, 2011.

purchase the new server.  On March 20, 2008, MMC filed a demand for arbitration.  The arbitration panel consisted of three members, with DCS and MMC each choosing a member.  The two selected members then chose the final panel member.  DCS appointed Ms. Carol Butner on or about April 16, 2008.

Butner made various disclosures prior to the arbitration. (The disclosures are discussed more fully below).  DCS and MMC agreed at a preliminary conference that the AAA's website would be the means of disclosing information.  The AAA notified parties of Butner's disclosures through its online Webfile system.  This notification was made prior to the hearing.  A three member panel conducted a five-day hearing from April 5-9, 2010.  The unanimous panel found for DCS.  MMC moved to vacate, alleging "evident partiality" by Butner.  MMC argues that Butner's disclosures were insufficient in light of the arbitration provision and code of ethics because she failed to *strictly* comply with their requirements.  In particular, MMC asserts that Butner did not disclose the fact that she was an arbitrator on the *Venus Ford* arbitration panel, which considered similar contract language and heard from the same damages expert as in the MMC proceedings.  The district court found that because of her prior experience serving on the *Venus Ford* panel, Butner's conduct created a "reasonable impression of bias" and rose to the level of "evident partiality" as interpreted in *Positive Software Solutions, Inc., v. New Century Mortg. Corp.*, 476 F.3d 278 (5th Cir. 2007) (en banc).  It also opined that MMC had not waived its right to object to Butner's service on the MMC panel because it had no notice or actual knowledge of the *Venus Ford* arbitration.  The court relied on Counts's affidavit,[2] which asserted that he did not learn of Butner's prior service on the *Venus Ford* arbitration until after MMC had lost its arbitration.

---

[2] Mark Counts is a named (and managing) partner at Counts & Bonacci, L.L.P., the law firm that represented MMC against DCS during arbitration proceedings.

No. 11-20053

## II. Standard of Review

Our review of the district court's decision to vacate an arbitration award is *de novo.* *Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 399 (5th Cir. 2006); *see also Kergosien v. Ocean Energy, Inc.* 390 F.3d 346, 352 (5th Cir. 2004), *impliedly overruled on other grounds by Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349 (5th Cir. 2009). Appellate review of a district court's action on vacatur is intended "to reinforce the strong deference due an arbitrative tribunal." *McIlroy v. PaineWebber*, 989 F.2d 817, 820 (5th Cir. 1993), *impliedly overruled on other grounds by Williams v. Cigna Fin. Advisors Inc.*, 197 F.3d 752, 759 (5th Cir. 1999). "To assure that arbitration serves as an efficient and cost-effective alternative to litigation, and to hold parties to their agreements to arbitrate, the [Federal Arbitration Act] narrowly restricts judicial review of arbitrators' awards.*" Positive Software Solutions Inc.*, 476 F.3d at 280. "We review an arbitrator's award with an 'exceedingly deferential view.'" *Ameser v. Nordstrom, Inc.*, 442 F. App'x 967, 969 (5th Cir. 2011) (unpublished) (citing *Brabham v. A.G. Edwards & Sons, Inc.*, 376 F.3d 377, 380 (5th Cir.2004)).

## III. Discussion

### A. Waiver

The applicable law here is the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10 *et esq*. The FAA authorizes courts to vacate arbitration awards in four circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  MMC contends that § 10(a)(2) is implicated because Butner failed to make complete disclosures prior to the arbitration proceedings.

DCS contends that MMC waived its claim of evident partiality under FAA § 10 because it failed to properly raise its objection at any time during the arbitration proceedings or before determination of the arbitration award.  MMC concedes that generally a party must object before the award is rendered.  But the rule only applies if the party had actual knowledge of the circumstances that form the basis of the objection.  According to MMC, it had no knowledge of Butner's prior service with the *Venus Ford* arbitration until after it had lost and MMC's counsel collaborated with *Venus Ford's* counsel on another project.

A party seeking to vacate an arbitration award based on an arbitrator's evident partiality generally must object during the arbitration proceedings.  Its failure to do so results in waiver of its right to object.  *See Bernstein Seawell & Kove v. Bosarge*, 813 F.2d 726, 732 (5th Cir. 1987) ("Appellant had the obligation to make his objection to the composition of the arbitration panel at the time of the hearing.  By not doing so, Bosarge waived his right to challenge the selection of the arbitrators.") (citation omitted); *see also Delta Mine Holding Co. v. AFC Coal Props., Inc.*, 280 F.3d 815, 821 (8th Cir. 2001) ("Even when a neutral arbitrator is challenged for evident partiality, the issue is deemed waived unless the objecting party raised it to the arbitration panel.") (citation omitted); *Cook Indus., Inc., v. C. Itoh & Co. (America) Inc.*, 449 F.2d 106, 107-08 (2d Cir. 1971) ("Where a party has knowledge of facts possibly indicating bias or partiality on the part of an arbitrator he cannot remain silent and later object to the award of the arbitrators on that ground.  His silence constitutes a waiver of the objection.") (citation omitted).

No. 11-20053

The district court cited to *Bosarge* as the general rule that an objection not made during proceedings is waived. It concluded, however, that the strict rule is "paradoxial[] if the arbitrator completely failed to disclose a potential conflict, the objecting party could not know about it in order to object."[3] The record shows that Butner completed and filed her Acceptance of Party-Appointed Arbitrator questionnaire and drafted a memorandum containing her disclosure. On the questionnaire she checked a box next to the statement: "I HEREBY DISCLOSE THE FOLLOWING." She also checked the box next to the statement that provided: "SEE DISCLOSURE DATED MAY 23, 2008." In her disclosure memorandum, she stated, "I served on panel [sic] of three arbitrators that considered a dispute between Dealer Computer Services, Inc. and another party. I do not believe that my service on that panel creates a conflict with my serving in this case." The questionnaire she completed contained "YES" and "NO" boxes for each question. For the question: "[h]ave you, any member of your family, or any close social or business associate ever served as an arbitrator in a proceeding in which any of the identified witnesses or named individual parties gave testimony?", Butner inserted a question mark ("?") in between the answer boxes. She checked the "YES" box for the question: "[h]ave any of the party representatives, law firms, or parties appeared before you in past arbitration cases?"

Even without the specific information of the *Venus Ford* arbitration, Butner's disclosures were sufficient to put MMC on notice of a potential conflict.

---

[3] Dec. 2010 Order at 12. In the context of a non-disclosure case, the district court asserted that the Fifth Circuit requires "some type of notice" to the objecting party of potential partiality before finding waiver. *Id.* The court ultimately ruled that it did not need to decide whether actual or constructive knowledge was required because it found that MMC lacked "sufficient information to object during the arbitration, and so did not waive objections." *Id.* at 13. However, the July 2011 Order recognized that DCS's circumstantial evidence "may suggest that Mr. Counts had constructive notice, or that his law firm had actual notice." July 2011 Order at 3.

No. 11-20053

Accordingly, the court's conclusion that "the arbitrator completely failed to disclose a potential conflict" is incorrect. Particularly, in light of MMC's duty to reasonably investigate,[4] Butner's disclosures were sufficient to put MMC on notice. The information was available on the AAA online Webfile system, which was the agreed upon method of disclosure.

## IV. Conclusion

Sufficient disclosures were made to provide MMC with notice of potential bias and MMC should have raised their objection prior to receiving an adverse result. MMC failed to object before the rendering of the arbitration award, thus its objections are waived. Accordingly, we VACATE the district court's orders and REMAND to the court with instructions to CONFIRM the arbitration award.

---

[4] Federal case law holds that arbitrating parties have a reasonable duty to investigate information of potential partiality. "[W]e have declined to vacate awards because of undisclosed relationships where the complaining party should have known of the relationship, or could have learned of the relationship 'just as easily before or during the arbitration rather than after it lost the case.'" *Lucent Techs., Inc. v. Tatung Co.*, 379 F.3d 24, 28 (2d Cir. 2004) (citation omitted); *see also Kiernan v. Piper Jaffray Cos., Inc.*, 137 F.3d 588, 593 (8th Cir. 1998) ("While they did not have full knowledge of all the relationships to which they now object, they did have concerns about [the arbitrator's] impartiality and yet chose to have her remain on the panel rather than spend time and money investigating further until losing the arbitration...The Kiernans cannot now seek to avoid their tactical decision to await the decision of the three member panel rather than seek [the arbitrator's] removal.").